## No. 3733.—H. S. LOSEE v. L. A. SAUTON.

A purchaser of real estate at judicial sale must comply with the terms of his bid by paying the price before he can demand a title from the sheriff translative of the property. If he fails to pay the price the property does not pass to him, and he can not maintain an injunction to stay its sale, when made by a creditor, on the ground that he is the owner.

APPEAL from the Ninth Judicial District Court, parish of Rapides. Orsborn, J. H. S. Losee, in person, plaintiff and appellant. M. Ryan, for defendant and appellee.

LUDELING, C. J. This suit was commenced by an injunction to restrain the sheriff from selling the undivided half of a tract of land, under an execution issued in the suit of Sauton, tutor, v. W. J. Beatty, on the ground that the property belonged to the plaintiff. On the trial, the court of the first instance dissolved the injunction without.

Losee v. Sauton.

damages. The plaintiff has appealed, and the appellee has asked that the judgment be amended by allowing damages.

The plaintiff alleges that his title is derived from his purchase at sheriff's sale, under an execution against W. J. Beatty. It appears from the record'that at that sale the plaintiff was the last and highest bidder, that the sheriff refused to make him a title because he thought he had erred in selling an undivided half of the property when he had advertised the whole for sale, and he had been enjoined from selling one undivided half thereof. On a rule taken against the sheriff he was ordered to make and deliver to the purchaser a title according to law, " on his paying the price."

Upwards of five months after this judgment had been rendered, the plaintiff in this suit having failed to pay the price, Sauton, tutor, caused an execution to issue against his debtor, Beatty, and the property previously knocked off to Losee, the plaintiff, was seized and advertised for sale. The claim of the tutor, Sauton, was secured by a legal mortgage on the property, and might have been proceeded against in the possession of Losee, if he had paid the price and received a title, which, however, he has failed to do. It is clear that Losee can not have a title to the property bid for by him at the sheriff's sale until he pay the price (2 La. 360); and it is equally clear that it was his duty to pay the price within a reasonable time after the judgment which ordered the sheriff to make him a title on his paying the price. The payment of the price is a condition precedent to his getting a title. C. P. 689.

In Stout vs. Voorhies et al., this court said : " It is proper, however, to settle a previous question raised by the plaintiff's counsel relating to the right acquired by the bid of the former purchaser, although he did not immediately comply with the condition of the sale, which was cash. In support of this right, reliance is had on the articles of the Code of Practice, 690, 695, and on the articles of the Louisiana Code, 2588, 2590. The provisions of the Louisiana Code relate to sales by auction, both to voluntary and forced sales, but we are of opinion that the article 2589 is particularly applicable to voluntary sales, as is also the preceding article. The Code of Practice relates to sheriff's sales, and according to the articles cited an adjudication has the effect of transferring to the purchaser all the rights of the party in whose hands the property was seized, and the sheriff is allowed three days, within which he must make an act in form. This transfer of rights does not, in our opinion, take place, and consequently the officer is not bound to perfect the sale by an act translative of them to the purchaser, unless the latter has complied with the conditions of such sale. The condition of the adjudication in the present instance was, that the purchaser should pay cash," etc. 4 La. 395; 3 La. 475. The plaintiff has

made no offer to comply with his bid, and the sheriff did not have to put him in default. C. P. 689; Branner & Co. vs. Hardy et al., 18 An. 537. But the evidence shows that the sheriff told him he was ready to make him a title when he paid the price. We think the equitable remedy of injunction has been abused in this case, and the defendant is entitled to damages.

It is therefore ordered and adjudged that the judgment of the lower court be amended so as to give the defendant judgment against the plaintiff and John Bogan, *in solido,* for three hundred dollars, attorney's fees and costs of this appeal.

---

WYLY, J., *dissenting.* The plaintiff, Losee, bought at sheriff's sale under the writ of W. H. Letchford & Co. vs. William J. Beatty, the undivided half of a plantation in the parish of Rapides, for $36 66; but the sheriff refused to make him a formal deed, notwithstanding he tendered to him the price of adjudication. Losee then took a rule on the sheriff to compel him to make the deed, and in April, 1871, this court made the rule absolute, deciding that Losee was the lawful purchaser, and requiring the sheriff to make him the deed. For some cause the sheriff has neglected to make the deed, and Losee to pay the price. After several months had elapsed, L. A. Sauton, tutor, issued execution and seized the property which had been adjudicated to Losee under W. H. Letchford & Co.'s writ against Beatty, the common debtor. Losee enjoined the sale on the several grounds stated in the petition.

The court dissolved the injunction, and Losee appeals.

Losee contends that Sauton, tutor, who intervened and claimed the proceeds in the sale of Letchford, under which he bought, can not ignore his title, and seized the property as the property of Beatty; that he has never refused to pay the price, and has often urged the sheriff to make the deed pursuant to the decree of this court, being himself always ready and willing to pay the price.

On the other hand it is contended that since the return of the decree of this court requiring the deed to be made, the sheriff has always been ready to make the formal transfer to Losee, but that Losee has never tendered him the price.

The question is: can the title of the adjudicatee be treated as an absolute nullity, because for several months he has failed to tender to the sheriff the price, notwithstanding he did so immediately after the adjudication, when the sheriff refused to accept it and make him the deed, and notwithstanding the fact that since the rule has been made absolute requiring the sheriff to make the deed, the latter has never offered to do so, nor demanded the price?

Has the obligation of the buyer to pay the price, and the obligation of the seller to make the title, perished?

Can it be said that the adjudicatee who tendered the price and was refused a deed, and who subsequently obtained the decree of this court recognizing his title and commanding the sheriff to make the formal transfer, is bound again to make another formal tender of the price, and again to put the sheriff in default for the deed within a reasonable time, or else his title will be lost, notwithstanding it is shown that he has always been willing to pay the price whenever the sheriff shall tender him the deed in accordance with his duty and pursuant to the decree of this court?

It is well settled that the adjudicatee is not bound to make a formal tender of the price to the sheriff and put him in default for the deed, in order to preserve his rights under the adjudication. It is enough that he does not refuse to pay the price when called upon to do so by the sheriff.

The sheriff must offer to make the deed and put the adjudicatee in default for the price, in order to defeat the rights of the latter, resulting from the adjudication. The law is very clear on this point: "If the person to whom the property has been adjudicated shall refuse to pay the sheriff the price, or offer the proper securities when the sale has been made on credit, the sheriff may expose to sale anew the thing seized, and adjudicate it to another person." C. P. 689. "When the highest price offered has been cried long enough to make it probable that no higher will be offered, he who has made the offer is pub? licly declared to be the purchaser, and the thing sold is adjudicated to him." C. C. 2585. "This adjudication is the completion of the sale; the purchaser becomes the owner of the object adjudged, and the contract is from that time subject to the same rules which govern the ordinary contract of sale." C. C. 2586. "If the adjudication be made on condition that the price shall be paid in cash, the auctioneer may require the price immediately, before delivering possession of the thing sold." C. C. 2587. "If the object adjudged is an immovable, or slave, for which the law requires that the act of sale shall be passed in writing, the purchaser may retain the price, and the seller the possession of the thing, until the act be passed." * * * C. C. 2588. "In all cases of sale by auction, whether of movables or slaves, or immovables, if the person to whom the adjudication is made does not pay the price at the time required, agreeably to the two preceding articles, the seller, at the end of ten days and after the customary notices, may again expose to public sale the thing sold, as if the first adjudication had never been made." * * * C. C. 2589.

Now, whether a sale be made under article 689 C. P., or under the articles of the Civil Code just quoted, the rights of the adjudicatee can

not be defeated, unless he " shall refuse to pay the sheriff the price," or if he "does not pay the price at the time required." Here the adjudicatee, Losee, has never refused to pay the price, nor has he ever been required by the sheriff to do so.

" The effect of an adjudication under a *fieri facias* is to transfer to the purchaser all the rights and claims of the party in whose hands it was seized; and the sheriff is bound thereupon to pass an act of sale to the purchaser, and to put him in possession of the property sold." 6 R. 100; C. P. 690, 691; C. C. 2589; 6 R. 107; 10 R. 30.

It was the duty of the sheriff charged with the execution of the writ under which the sale was made, to call upon Losee for the price. Until that is done, it can not be said that the latter has refused to pay the price, and that his rights resulting from the adjudication are lost.

This question was recently before the court in the case of Heirs of Doll vs. Katham, 23 An. 486, where, after a full examination of the authorities on the subject, it was held that " a purchaser of property at judicial sale acquires an indefeasible title by complying with his bid. In case of an active violation of the contract of purchase by the purchaser, or in case of open refusal to comply with his bid after demand, default is not necessary as a condition precedent to the action for the recission of the sale and the recovery of damages. But if no demand has been made on the purchaser to comply with the terms of the sale, then and in that case a putting in default would seem to be a condition precedent to recovery."

Losee was examined as a witness, and he testified that " the sheriff never made a demand on me for the money, never put me in default in any manner; I have always been ready to pay that money, and am ready still. * * * Immediately after the final decision of the Supreme Court was reported back to the clerk of the court in suit No. 1552, I went into the sheriff's office and said to Mr. De Lacy, sheriff, that the decision was back, and it was against him. I then requested him to make out the title papers as soon as he could make it con- venient; that I was ready and willing to comply with the terms of the bid. * * * Afterwards, on another occasion, I asked him whether he would prefer the money or a sight draft, and asked him if he had his papers made out, and he said no. I urged him to make them out and to let me know whether he wanted the cash for the bid or whether he would take a draft—to let me know so that I could send to the city and have the money brought up. He said he would see about it. I several times urged him and his deputy, Mr. Clements, to make out my title. * * * I told him I was ready to comply with my bid, and wanted my papers. He said he did not know what he had to do in it until he saw Judge Ryan, counsel of Sauton. I called his

Losee v. Sauton.

deputy, John Clements, and showed him in the clerk's office the order of the Supreme Court; and urged him also to make out the title."

On cross examination he said: * * * "I never actually showed the sheriff the money, or made a tender. When I first purchased the land, three years ago, I actually tendered the money to the sheriff, and he refused to make the title, but never since the Supreme Court decided he should make a title."

It is not pretended that the sheriff ever made out the title for Losee, although urged to do so; nor is there a particle of evidence showing that he ever demanded of Losee the price, and that the latter refused to pay it. Nor is it disputed that Losee tendered the price immediately after the sale, before he took the rule to compel the sheriff to make him a title. If article 2586 C. C., and article 690 C. P., mean what they say—that the adjudication completes the sale, and of itself alone has the effect to transfer all the rights and claims of the party in whose hands the thing was seized; and if this adjudication can not be defeated unless the purchaser "shall refuse to pay" the price, I do not see how the plaintiff, Losee, has lost his title, because he was undoubtedly the adjudicatee, and there is not a particle of evidence to show that he has refused to pay the price. Having tendered the price immediately after the adjudication, he was not bound to do so again. It was the duty of the sheriff to make him the deed, as commanded by this court. This he has never done, nor has he demanded the price. In view of the facts of this case, and the authorities to which I have referred, I do not believe that Losee's title should be treated as an absolute nullity, and I therefore dissent.

Rehearing refused.