(62 South. 412.)

No. 19,746.

CENTREVILLE BANK v. BOUDREAUX (BAYOU SALE PLANTING & DRAINAGE CO., Intervener).

(May 26, 1913.)

*(Syllabus by the Court.)*

SALES (§§ 101, 196*)—LAPSE OF AGREEMENT—RIGHT TO RESCIND.

An agreement to sell mules at certain prices to tenants on a sugar plantation, with the understanding that the owner would pay cash or its equivalent for the property, lapses on the failure of the owner to make payment as stipulated. In such a case the delivery of the mules to the tenants in anticipation of prompt payment by the owner constitutes no waiver of the right of the vendor to recede from the agreement upon the failure of the owner to make payment in cash or its equivalent.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 267, 268, 510; Dec. Dig. §§ 101, 196.*]

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Charles A. O'Neill, Judge.

Action by the Centreville Bank against Minos P. Boudreaux, in which the Bayou Sale Planting & Drainage Company intervenes. From a judgment for plaintiff, the intervener appeals. Modified.

C. J. Boatner, of Franklin, for appellant. A. C. Allen and L. O. Pecot, both of Franklin, for appellee bank. W. C. Baker, of Franklin, for appellee Boudreaux.

LAND, J. Plaintiff, a judgment creditor of the defendant, caused to be seized under a writ of fieri facias 7 mules, 80 tons of seed cane, and a lot of agricultural implements. The Bayou Sale Planting & Drainage Company (hereinafter called the "company") filed an intervention and third opposition, claiming the ownership of the mules and seed cane, and a pledge on the agricultural implements, and praying for judgment against the defendant for a balance of some $1,700 on account of advances to him during the year 1911. Intervener enjoined the sale of the mules and the seed cane. There was judgment decreeing defendant to be the owner of the mules and sustaining his claim of homestead exemption as to the agricultural implements. There was judgment in favor of the company for the seed cane, and for the balance of account sued on, and rejecting all claims for damages for the issuance of the injunction. The company appealed from the judgment.

The only error complained of by the appel-

lant is the ruling of the judge a quo on the question of the ownership of six of the mules.

Boudreaux had contracted to become a tenant for the year 1911 on a sugar plantation belonging to the company. Before he moved on the place Boudreaux had agreed to purchase four mules from Roberton, agent of Suttle, a large dealer in mules. The mules were delivered to Boudreaux on his statement that Williams, the manager of the company, would guarantee the payment of the price. Soon after Boudreaux moved on the plantation, two more mules were delivered to him by Roberton, agent of Suttle, on a similar assurance. It appears from Boudreaux's testimony that he made no agreement whatsoever with Roberton relative to the payment of the price, but this matter was left to be settled between Suttle and the company. Both Suttle and Roberton testified that the terms were cash or its equivalent in bankable paper. Some time after the delivery of the mules to Boudreaux, the manager of the company tendered to Suttle the note of Boudreaux for the total price of the six mules, indorsed by the company, per Williams, manager. This note was made payable on December 15, 1911. Suttle received this note on the representation of the manager that it would be cashed by the company, through its president. That officer repudiated the authority of the manager to make any such representation, and Suttle thereupon returned the note to the manager.

It appears that Roberton, as agent of Suttle, had bargained a large number of mules to other tenants of the company on the same plantation, and that the notes of the tenants, indorsed by the company, had also been tendered to and received by Suttle under the same representations as in the case of the Boudreaux note. All of these notes were returned by Suttle to the manager of the plantation. Suttle instructed his agent to take possession of all the mules which he had bargained to tenants on the plantation. The agent was proceeding to do so, when, at the urgent solicitation of the manager of the company, Suttle recalled the order and went to the city of New Orleans to see if the matter could not be arranged with Mr. Wall, the president of the company. Mr. Wall refused to cash the notes of the tenants, indorsed by the company, but agreed to give Suttle his individual note for over $13,000 for all the mules which had been delivered to tenants on the company's plantation. Mr. Wall testified in part as follows:

"I gave him the note, and he made me out a bill for the mules individually, and receipted it. A few days after this transaction I went to the plantation and saw Mr. Boudreaux and Mr. Dominguez, whom I saw together, and stated the conditions that had arisen, and told them that I could not let them purchase these mules from me, but they could use them and pay rent for them. Mr. Boudreaux said distinctly that arrangement was perfectly satisfactory to him. * * * And he agreed to pay rent for them at the rate of $25 a year per mule."

Mr. Williams, the manager, testified in part as follows:

"I notified every tenant on the place personally that Mr. Wall had bought the mules, and the notes that they had given would be returned to them whenever they wanted them, and the mules would be rented to each and every tenant at the rate of $25 a head. * * * I mean every tenant on the plantation that signed a contract with me. Mr. Minos Boudreaux was the first man to sign a contract as tenant."

Boudreaux contradicts Wall and Williams as to the asserted notice to him of the sale to Wall and the hire of the mules to him.

Suttle was not recalled to contradict the testimony of Wall. In his testimony Suttle says in one place that there was only one sale of the mules, and that was to Boudreaux; and in another that when he received Wall's note for the mules he thought he had sold them to the company. Of course, both statements are matters of opinion. Throughout his testimony, Suttle reiterates the statement that the sale to Boudreaux was a cash transaction. He said that he delivered the

mules expecting to get cash for them; that he refused to accept the notes of the tenants, never indorsed them, and returned the notes to the manager as soon as he found that they would not be cashed. Mr. Roberton testified, in substance, that the mule trades were for cash, or its equivalent in bankable paper.

Mr. Wall testified to the sale of the mules to himself, and the sale by him to Laws & Co., and the sale by that firm to the Bayou Sale Company. Mr. Wall also testified that the company had paid Laws & Co. for the mules.

The best evidence that the original agreement to sell to Boudreaux was never consummated is the undisputed fact that his note for the price of the mules was returned by Suttle to Williams, the manager, from whom it had been received. As before stated, Boudreaux made no agreement with Roberton or Suttle as to the terms of the payment, but left the matter to Williams, the manager of the company. If there was no stipulation as to time, the money was payable at the time and place of delivery. Civil Code, art. 2550.

There can be no question that Suttle intended to sell his mules on a cash basis. He was willing to take bankable paper in lieu of cash, but never intended to sell his mules on a credit of 12 months, and to trust to the future ability of the purchasers or their indorsers to pay. As a matter of fact, the Bayou Sale Company did not have at that time any bankable credit. Boudreaux's claim of title rests on the proposition that Suttle agreed to sell him the mules on a credit of 12 months. If Boudreaux intended to purchase on time, and Suttle intended to sell for cash or its equivalent, there was no agreement between the parties. The Bayou Sale Company conceded that the transaction rested on a cash basis, and admitted its failure to furnish the cash or its equivalent. No

complete title of ownership passes to the purchaser at a cash sale until he had paid the price thereof. See Lapene v. Badeaux, 36 La. Ann. 197, 198. On the face of the record, we see no good reason for questioning the sale of the mules to Mr. Wall, and the preponderance of the evidence shows that the defendant recognized Mr. Wall's title to the mules. It is reasonable to suppose that, as a matter of business, the tenants on the plantation were informed of the sale of the mules to Mr. Wall, and that they would have to pay rent for them.

It is therefore ordered that the judgment below be reversed and amended so as to decree that the intervener and third opponent, the Bayou Sale Planting & Drainage Company, is the owner of the six mules in controversy, and that said mules be released from seizure and delivered to said company, and that the injunction sued out by intervener and third opponent against the sale of said mules be reinstated and made perpetual, and that the plaintiff, the Centreville Bank, pay the costs of the seizure of said mules and the costs of the intervention, third opposition, and injunction herein; and it is further ordered and decreed that said judgment as thus reversed and amended be, and the same is hereby, affirmed, costs of appeal to be paid by the plaintiff and appellee.