No. 3363

Second Circuit

JOE DOVER v.
ATLAS ASSURANCE CO. OF LONDON,
ENGLAND
JOE DOVER v.
HOME INS. CO. OF NEW YORK
JOE DOVER v.
VIRGINIA FIRE & MARINE INS. CO. OF
RICHMOND, VA.
JOE DOVER v.
NORTH BRITISH & MERCANTILE INS.
CO. OF LONDON & EDINBURG

(November 7, 1930.  Opinion and Decree.)
(December 23, 1930.  Rehearing Refused.)

Thigpen, Herold, Lee & Cousin, of Shreveport, attorneys for plaintiff, appellant.

Crow & Coleman, of Shreveport, attorneys for defendants, appellees.

DREW, J. In these four suits, which were consolidated for the purpose of trial, the plaintiff sued for judgment against the defendants in the following amounts:

1. For judgment against the Atlas Assurance Company of London, England, in the sum of $1,500, on policy No. 8810259, covering insurance of $500 on building and $1,000 on stock of merchandise;

2. For judgment against the Home Insurance Company of New York, on policy No. 1280 for $1,500, covering insurance of $500 on building and $1,000 on stock of merchandise;

3. For judgment against the Virginia Fire & Marine Insurance Company of Richmond, Va., on policy No. 12517, covering insurance of $500 on building, $500 on stock of merchandise, and $500 on furniture and fixtures;

4. For judgment against the North British & Mercantile Insurance Company of London and Edinburg, on policy No. 295804, covering insurance of $500 on building, $500 on stock of merchandise, and $500 on furniture and fixtures.

The total insurance for which judgment is sought against the four companies by plaintiff is the sum of $6,000, in the following proportions: $2,000 on building; $3,000 on stock of merchandise in building; and $1,000 on furniture and fixtures in building.

Plaintiff further sued for 12 per cent damages for failure to settle with the insured within sixty days after proof of loss by the insured, and for reasonable attorney's fees, under Act No. 168 of 1908.

In each suit plaintiff alleged that on or about the 6th day of January, 1927, at the hour of 1 or 2 o'clock in the morning, his store building, together with the furniture and fixtures and the stock of merchandise kept therein, located in the town of Florien, Sabine parish, La., was entirely destroyed by fire, no part thereof being saved, and that the total amount of merchandise destroyed in said fire was in excess of $15,000; that the store building destroyed by fire was worth in excess of $2,500; and that the furniture and fixtures destroyed in the fire were worth in excess of $1,500. Plaintiff alleges on the different policies of insurance as the basis of his suit.

Defendants admit the fire and the destruction of the store building and its contents, but deny liability under the policies on the ground that two warranty stipulations in the policies had been violated by the plaintiff, as follows:

1. Change in interest, title, or possession.

"This entire policy, unless otherwise provided, by agreement and endorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the assured in fee simple * * * or if any change, other than by death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupant without increase of hazard), whether

by legal process or judgment, or by voluntary act of the assured, or otherwise."

In that Joe Dover, the plaintiff, on or about December 29, 1926, by authentic act did bargain, sell, convey, and deliver, with full warranty of title, unto J. L. McDaniel, all his right, title, and interest in and to the property covered by said insurance and did surrender possession and ownership of and control over said property to the said McDaniel, who, on said date, accepted title to and took actual possession and control over said property, and who was the owner and in possession of said property at the time of the fire, all without the knowledge and consent of defendants; and:

2. The iron-safe clause.

"The following covenant and warranty is hereby made a part of this policy:

"The assured will take a complete itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date, and upon demand of the assured, the unearned premium from such date shall be returned.

"The assured will keep a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from the date of inventory, as provided for in first section of this clause, and during the continuance of this policy.

"The assured will keep such books and inventory and also the last preceding inventory, if such has been taken, securely locked in a fire-proof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building.

"In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void, and such failure shall constitute a perpetual bar to any recovery thereon."

In that Joe Dover, the plaintiff, did not take the inventories and did not keep a set of books in compliance with said warranty stipulation in said policies, and that he did not keep such inventories and set of books securely locked in a fireproof safe at night, in compliance with said policies, nor did he produce said inventories and books to defendants for their inspection, though often demanded to do so, and that, by reason of these facts, the said policies are null and void.

The case was tried in the lower court on these issues and resulted in judgment declaring that the "Iron Safe" clause in the policies had been violated by plaintiff, and rejected his demand in each suit for insurance on stock of merchandise. He further held there had been no change of interest, title, or possession of the subject of the insurance, and rendered judgment for plaintiff against each of defendants for the amount of insurance covered by the said policies on the store building, fixtures, and furniture, amounting in all to $3,000. From this judgment, the defendants have appealed to this court. The plaintiff did not appeal. However, on the trial of the case in this court and after arguments had begun, counsel for plaintiff offered to file an answer to the appeal praying that the judgment be increased to the full amount sued for. Said filing was objected to as coming too late, and was allowed by the court, subject to the objection, stating that the question of plaintiff's right to file same at that stage of the case would be passed upon at the same time of passing on the merits of the case.

Act No. 103 of 1908, being an act to

amend article 890 of the Code of Practice, controls this question. That act stated that answer to appeal may be filed in the Court of Appeal during the first three days of the term of that court, provided the answer is filed before argument. The language of that act is plain. It does not say during argument or before submission of the case, but specifically says before argument of the case in which the answer is filed. The act needs no interpretation. The language is plain and unmistakable, and, unless an answer to an appeal is filed before the beginning of the argument of the case in which it is attempted to be filed, it comes too late and cannot be allowed.

Our holding that the answer to appeal was filed too late dispenses with the necessity of our passing on the second defense in this case, unless we should find that the violation of the "Iron Safe" clause will make void the insurance policies on the building, furniture, and fixtures, as well as on the stock of merchandise. We are of the opinion that it does not. The insurance on the merchandise, store building, and fixtures and furniture are included in one policy. However, the "Iron Safe" clause only affects the stock of merchandise when said clause is violated.

In the case of Thompson v. State Assurance Co., reported in 160 La. page 690, 107 So. 489, and the case of Stovall v. Sterling Fire Insurance Co., reported in 163 La. 284, 111 So. 707, it was held that a violation of the iron-safe clause did not affect the insurance on the building, furniture, and fixtures, although all were covered by one insurance policy.

In Cooley's briefs on "Insurance," volume 3, page 2995, we find the following:

"Though in some jurisdictions the fact that the consideration for the policy is entire has led the courts to declare the contract entire, an examination of the cases justifies the statement that the rule established by the weight of authority is that, if the policy covers separate classes or items of property, separately valued and insured for separate amounts, the contract is divisible and a breach of warranty or condition which affects only one of the classes or items covered will not avoid the insurance on the other classes or items. The fact that the policy contains a declaration that the entire policy shall be void on a breach of condition does not change this rule."

The only question remaining to be passed on by this court is, was there a change in the interest, title, or possession of the property prior to January 6, 1927, the date of the fire?

In November, 1926, plaintiff and J. L. McDaniel entered into a preliminary verbal contract and agreement whereby plaintiff agreed to sell and Mr. McDaniel agreed to buy the property covered by the insurance policies sued on, together with a gin located at Florien, and the deed was to be passed when the value of the merchandise was ascertained by taking of inventory. At that time Mr. McDaniel paid to plaintiff the sum of $1,000, to assure plaintiff of his good faith, which sum was to be forfeited in the event that Mr. McDaniel failed to consummate the purchase. During the month of December, 1926, and before there was a final agreement as to the price to be paid by McDaniel for the property that plaintiff had verbally agreed to sell him, McDaniel sold his business at Esto, La., and moved his family to Florien. Plaintiff, acting on this tentative agreement, began making arrangements to take over the Ford agency at Many, La. On the 26th or 27th of December, 1926, plaintiff, McDaniel and other helpers took inventory of the stock of merchandise and, based on said

inventory, the final purchase price was agreed on for the property covered by the insurance policies and the gin. On December 29, 1926, there was passed an authentic act of sale whereby it recited that Joe Dover, the plaintiff, granted, bargained, and sold to J. L. McDaniel all the property covered by the insurance policies, describing same, together with a certain gin and the land on which it was situated in the town of Florien, La. The consideration cited in said deed was the sum of $16,000 cash in hand paid. This deed was signed by plaintiff and McDaniel and delivered to the Sabine State Bank at Many, La., with letter attached to said deed reading as follows:

"Herewith annexed is deed from J. Dover to J. L. McDaniel, which is deposited with you to be delivered to said J. L. McDaniel upon payment by him of the sum of $12,000.00, which amount is to be placed to the credit of J. Dover, Florien, Louisiana.
"(Signed) J. Dover
"J. L. McDaniels."

At the time the deed was prepared and signed, McDaniels paid to the plaintiff an additional $3,000, making his total payments up to that time amount to $4,000. Both Dover and McDaniels testify that the true consideration agreed upon by them was $17,000, consisting of the $4,000 paid in cash and $1,000 worth of merchandise that plaintiff, Dover, was to take from the store during the year 1927, and $12,000, to be paid in cash before or at the time that McDaniels was to get delivery of the deed. They both further testify that it was understood and agreed that, if McDaniels did not raise the $12,000, and pay to the bank by the 10th or 12th of January, 1927, there was no sale, and the $4,000 already paid was to be forfeited. McDaniels testified that he was sure he could raise the $12,000 and would have raised it

and paid for the property within the time agreed upon had not the fire occurred. From and after the date of the deed above referred to, McDaniels went into the store, was given a key to the store by plaintiff, plaintiff also having a key to the store, and spent a part of each day in the store with McDaniels, both selling goods. However, the money derived from the sales was turned over to McDaniels and all goods purchased from that date until the date of the fire, January 6, 1927, were purchased in the name of McDaniels. The day before the fire, plaintiff left for New Orleans, and, before leaving, gave McDaniels the insurance policies sued on herein, stating to him that, if he wanted to close out the deal before his return (that is, to pay the $12,000 to the bank), he could have the insurance policies changed, to which statement McDaniels replied that he would wait until plaintiff returned. The bookkeeper in the store, it seems, was working for both plaintiff and McDaniels after the date of deed and received pay from McDaniels for the time between the date of the deed and the fire, and also received pay from plaintiff for services performed for him during that time.

Defendants contend that the above state of facts constitutes a sale from plaintiff, Dover, to McDaniels, of date December 29, 1926, and cite in support of their contention a number of authorities which we will discuss hereafter.

We might say here that the evidence is uncontradicted that the storehouse, stock of merchandise, furniture, and fixtures, were completely destroyed by fire on the morning of January 6, 1927, and that the storehouse was well worth the sum of $5,000, and the furniture and fixtures well worth the sum of $2,000, and the stock of merchandise was worth $12,800.

Defendants rely on article 2456 of the Civil Code, which reads as follows:

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

And article 2479 of the Civil Code, which reads as follows:

"The law considers the tradition or delivery of immovables, as always accompanying the public act, which transfers the property. Every obstacle which the seller afterwards interposes to prevent the taking of corporal possession by the buyer, is considered as a trespass."

And cites the case of State v. Whited & Wheless, 104 La. 125, 28 So. 922, as the correct interpretation of said articles. The facts in that case are entirely different from the case before us. Plaintiff sold to defendant certain shares of stock in a lumber company, and the defendant gave notes for the payment of same, and, by agreement between plaintiff and defendant, the stock and notes were placed in a bank with an agreement that, as the notes become due, the bank was to collect the money and release the stock to defendant. The court held that there was not only a sale of the stock, but a pledge of the same to secure the payment of the price, by delivering to the person agreed upon between the parties. In the case before us, no notes were given for the purchase price, and there was nothing to be pledged. The deed was for cash to be delivered to McDaniels upon the payment of cash and not before. The only way for plaintiff to have protected himself for the purchase price, if the property had been delivered, was by credit deed and mortgage. That was not the trade.

The case of Barfield v. Saunders, 116 La. 136, 40 So. 593, cited by defendants, is also distinguished from the case before us in that the plaintiff, Barfield, verbally agreed to purchase land from defendant, gave his five promissory notes in payment, paid the first note and took from defendant a receipt for same, in which receipt it was stated that the note went as a payment on the Prudhomme place, leaving four more notes of $400 each, with interest from specific dates. The court held in that case that the receipt was a promise to sell which had not only been accepted, but partially executed, and which granted to the promisee all the rights of a vendee from the day that he partially executed his promise by paying one of the notes.

The purchase price in that instance was represented by a series of notes executed by the plaintiff, purchaser. It was a credit sale in which one of the notes had been paid and receipted for and Barfield had been put in possession of the property. The case before us involves a cash deed with a suspensive condition; that is, the deed was to be delivered to McDaniels only upon the paying of $12,000 in cash.

Defendants cite one other Louisiana authority, McCain v. Hicks et al., 150 La. 43, 90 So. 506. This case is distinguished from the case before us in that the promise to sell, in writing, called for a cash payment of $1,000 and the balance in installments. Two of the installments were paid and the vendee took possession of the place and placed it in the hands of realtors for sale at a much larger price than they had agreed to pay for it. After having paid two installments, amounting to $10,500, and having complete control and possession as owners of the place and advertising same for sale, the vendees became dissatisfied and sued for the return

of the money paid by them to the vendor, alleging defects in the title to one eighty acres of the land. The court said that the true reason for the vendees wanting to recede from the sale was that they were not able to raise the money to make the other payments as they fell due, and said that the facts in this case showed that the vendees had accepted the sale. The facts in this case distinguish it from the case before us. One is a promise to sell, stipulating that the payments are to be made in installments at specific times. Part of the installments were met. The other is a cash sale not to be completed and no delivery of deed to be had until the full purchase price is paid.

Article 2021 of the Civil Code reads as follows:

"Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happen, it is a suspensive condition; if the obligation take effect immediately, but is liable to be defeated when the event happens, it is then a resolutory obligation."

Article 2026, Civil Code. Conditions are express or implied:

"They are express, when they appear in the contract; they are implied, whenever they result from the operation of law, from the nature of the contract, or from the presumed intent of the parties."

Article 2028, Civil Code. Conditional contract complete by assent:

"The contract of which the condition forms a part is, like all others, complete by the assent of the parties; the obligee has a right of which the obligor cannot deprive him; its exercise is only suspended, or may be defeated, according to the nature of the condition."

It is clear that McDaniels had the right to meet the condition set out in the deed and letter attached, but it was necessary that he do so before acquiring title to the property.

Article 2487 of the Civil Code reads as follows:

"The seller is not bound to make a delivery of the thing, if the buyer does not pay the price and the seller has not granted him any term for the payment."

In the case of Lapene v. Badeaux, 36 La. Ann. 194, page 197, the Supreme Court of this state said:

"It is apparent from the spirit and letter of those different texts of law, that it is the contract which is perfected by the agreement of competent parties as to the thing and price; but that title to the property is really transferred from vendor to vendee only when the terms of sale have been complied with. The failure to pay, when unjustified, is equivalent to a refusal. An adjudicatee or purchaser, in legal contemplation, is in default as well by an unfounded failure as by an unwarranted refusal.

"The contract of sale does not make the buyer master and possessor, and does not give him a right to enjoy, to use and to dispose of the thing sold, but only a right to demand the delivery of it. This delivery of the thing, together with the payment of the price, consummates the sale and makes the buyer fully master and possessor of the thing, which was the end of the contract of sale. R. C. C. 2487; Domat, note to art. X, sec. 11; Tit. 11, Book I, part 1, sec. 275; Marcade, vol. 6, p. 142, on Art. C. N. 1583.

"It is only when the purchaser is entitled to demand and obtain delivery, where it is not given to him, that he can be considered as the absolute owner and entitled to enjoyment as such.

"The purchaser has a right to receive possession only after he has performed all his part of the contract, as by paying the price or settling for the same, as may have been agreed upon between him and the vendor.

"Article 2487, R. C. C., is explicit on the subject. It reads:

" 'The seller is not bound to make a delivery of the thing if the buyer does not pay the price.'

"The French law, from which ours derives, is textually the same. C. N. 1612. * * *

"There exists similar provision in the Spanish law, which, like the French, once prevailed here. * * *

"The theory has its foundation in the Roman law. * * *

"The principle finally consecrated by our law has been applied by the Courts. Washburn v. Green, 13 La. Ann. 332; Doll's Heirs v. Kathman, 23 La. Ann. 486; Mazoue v. Caze, 18 La. Ann. 31; Losee v. Sauton, 24 La. Ann. 370; Haynes v. Breaux, 16 La. Ann. 142; Hills v. Jacobs, 7 Rob. 406; Osterberg v. Union Trust Co., 93 U. S. 424, 23 L. Ed. 964."

In the case of Wells v. Blackman, 121 La. 394, page 413, 46 So. 437, 444, the Supreme Court of this state cited with approval, the following extract from "Benjamin on Sales," Am. Ed. 330:

" 'If it can be inferred * * * from the acts of the parties and the circumstances surrounding the transaction, that it was the intent that delivery and payment should be concurrent acts, the title will be deemed to have remained in the vendor until the condition of the payment has been complied with' "—citing case of Kessler & Co. v. Manhein, 114 La. 619, 38 So. 473.

This principle of law covers the case before us completely, for we have the uncontradicted testimony of both the vendor and vendee that delivery of the deed should be concurrent with the payment of $12,000, and the further evidence of the written letter to that effect attached to the deed.

In the case of Centreville Bank v. Boudreaux et al., 133 La. 75, 62 So. 412, 413, the court said:

"No complete title of ownership passes to the purchaser at a cash sale until he had paid the price thereof." (Citing with approval the case of Lapene v. Badeaux, supra.)

In the case of Kessler v. Manhein, 114 La. 619, 38 So. 473, the Supreme Court of this state again upheld the decision in Lapene v. Badeaux, cited supra.

In the Centreville Bank v. Boudreaux case, cited above, the thing sold was mules, and they had been delivered to the vendee. The court held that the sale was for cash and the cash had not been paid, and there was no sale, although they had been delivered and the vendee had taken actual possession of them and worked them.

In the case of Capital Building & Loan Association v. Northern Insurance Co., 166 La. 179, 116 So. 843, 844, the Supreme Court of this state has used language that is very pertinent to the issues here before us:

"The counsel for the insurance company, in support of his contention that the adjudication amounted to a perfect and complete sale, cites article 2439 of the Civil Code, which provides that a sale is perfect when three circumstances concur, to-wit, the thing sold, the price, and the consent. And article 2456, which declares that the sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser, with regard to the seller, as soon as there exists an agreement for the subject, and for the price thereof, although the object has not yet been delivered, nor the price paid.

"If counsel's construction of the two articles were adopted, then all that would be necessary to avoid a fire policy, on account of a change of ownership, would be simply to prove that the insured had agreed to sell his property to another, and at a fixed price which the proposed purchaser had agreed to accept.

"And the forfeiture would likewise be visited on the mortgagee, if it had been in-

formed of the agreement of sale and had failed to notify the insurance company thereof.

"Such is not the meaning of the articles of the Code, and such is not the interpretation placed upon said articles by the decisions of this court.

"Article 2440 of the Code declares that all sales of immovables shall be made by authentic act or under private signature, and every verbal sale of immovables shall be null, as well for third persons, as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.

"The articles referred to must be construed with article 2462. That article qualifies the language used in articles 2439 and 2456, and clearly defines the meaning of such articles. It is therein declared that where the thing, the price, and the reciprocal consent exists, if it relates to immovables and is in writing, it amounts to a sale, in so far as to give either party the right to enforce specific performance of same.

"It will not do, therefore, to say that the mere concurrence of the thing, the price, and the consent creates a perfect and executed contract of sale such as to transfer the ownership of the property from the seller to the buyer.

"Nor will it do to say in a judicial sale that the mere adjudication by the sheriff operates a transfer of the property from the seized debtor to the adjudicatee at such sale.

"Like the promise of sale, the adjudication is a sale in the sense that it gives the right to either the adjudicatee or the seizing creditor to compel compliance with the terms of adjudication.

"The question here presented has been up frequently for consideration, and this court has invariably held that where the purchaser for cash refuses to comply with the terms of sale by paying the price, he is considered as never having been owner."

In this case, the court cites the case of Lapene v. Badeaux, supra, with approval.

In the case of Etta Contracting Co. v. Bruning, 134 La. 48, 63 So. 619, 621, the court said:

"There is a line of cases whereby it may be regarded as settled (certainly, with regard to judicial sales) that, where the purchaser refuses to comply with the terms of the adjudication, he is considered as never having been the owner."

The same rule will apply in a case where the condition agreed to by the vendor and vendee is that the payment of the price and the delivery of the deed shall be concurrent. And failure of the vendee to pay the price and receive delivery of the deed fails to change the ownership of the property.

Defendant contends that the placing of the deed in the bank was done by the plaintiff, that it was pledged with the said bank acting as agent for plaintiff for the sole purpose of security and collateral. If the act of executing the deed transferred and delivered the property, then there was nothing to pledge, and the deed itself which stated a cash consideration and acknowledged receipt of same could not possibly have been any security to plaintiff.

Counsel for plaintiff, we think, has correctly stated the law applicable to change of interest, and we quote from his brief:

"The general jurisprudence is to the effect that 'there is no change of title, interest or possession, if by the alleged transfer, no interest passes, no possession or right of possession is given and the parties thereto do not intend any such change.' Under the Louisiana law, 'interest' refers to a proprietary or insurable 'interest' in the property covered by the fire insurance policy.

"In the case of Stenzel v. Penn. Fire Insurance Co., 110 La. 1019, 35 So. 271, 98 Am. St. Rep. 481, the Supreme Court said:

"'A condition against change in "interest" refers to a proprietary or insurable interest in the property, and does not embrace a mere change in the insured's interest in the preservation of the property, such as, for instance, results from a reali-

zation that a mortgage on the property will be foreclosed.'

"Whether the execution of a deed placed in escrow would effect a change in interest, title or possession, depends on whether or not in such a transaction, title passed to the vendee. The universal rule is that unless the conditions of the escrow agreement are complied with, no title passes, and without title, the legal possession does not pass, since legal possession, as a rule, follows the title. In this condition, one must not confuse occupancy with possession, for there exists quite a distinction between the occupancy of property and the possession of property. To illustrate, a tenant may occupy the property, but the possession is that of his lessor; and likewise, a licensee may occupy the property, but the possession is that of the licensor, or owner."

The rule applicable to this case, we think, is correctly stated by the Kansas Supreme Court in the case of Pomeroy v. Ætna Insurance Co., reported in 86 Kan. 214, 120 P. 344, 3 L. R. A. (N. S.) 142, Ann. Cas. 1913C, page 170, and is in line with the jurisprudence of this state. The court said:

"While a deed is in escrow, awaiting the performance of conditions precedent to the delivery thereof by the vendor to the vendee, there is no change in the title or right of possession to the property, although the purchaser occupies it with the consent of the vendor in anticipation of completing the contract of sale and purchase.

"Where in such case, the vendor has a fire insurance policy on a house situated on the premises, and the house is destroyed by fire while so occupied and before the conditions of the escrow are performed, the hazard from fire not being increased, the right to recover on the contract of insurance is not forfeited."

In the case before us, there is no claim that the fire hazard was increased by the occupancy of the store by McDaniels, with the consent of the plaintiff herein.

In the case of Budelman v. American Insurance Co., 297 Ill. 222, 130 N. E. 513, the court said:

"That since legal possession follows the legal title, an executory contract of sale of land and delivery of the premises to the vendee thereunder was not a change of possession within the meaning of the provision of the policy."

And in Mackintosh v. Agricultural Fire Insurance Co., 150 Cal. 440, 89 P. 102, 119 Am. St. Rep. 234, the Supreme Court of California said:

"There is not a change of possession [or forfeiture of policy] * * * where one, given an option to purchase, is given right of possession for experimental purposes, subject to free access and management of the owner."

In the case of Trichel v. Home Insurance Co., 155 La. 459, 99 So. 403, the Supreme Court of this state held that, although a promise to sell had been entered into and part of the purchase price paid, and a number of installments had been paid, the property was destroyed by fire before she had paid the number of installments required under the contract to entitle her to a deed, and that there had been no change in interest, possession, or title such as to avoid the fire insurance policy held by her vendor.

Under the facts of this case and the jurisprudence of our courts, we are forced to hold that there was no change in interest, possession, or title in the property covered by the insurance policies prior to the date of the fire, and the judgment of the lower court in that respect is correct.

Plaintiff prayed for 12 per cent damages for failure of the defendants to settle or pay the insurance that was due within sixty days after proof of loss, and for reasonable attorney's fees under Act No. 168 of 1908.

Act No. 168 of 1908 requires the insurance company, in case of loss by fire, to furnish the assured blank forms of statements and proofs of loss, after having been informed of such loss by fire, and, in case the company fails or neglects to furnish such blank forms of proof of loss, then such company is deemed to have waived the requiring of any statement or proof of loss at the hands of such insured, and, upon suit being brought upon the policy, the company shall not be heard to complain of the failure of the insured to furnish such statements of proof of loss. In this case no blank forms or statements were furnished the insured by the insurance companies; they cannot now complain of the failure of plaintiff to make the proof. Thompson v. State Assurance Co., 160 La. 686, 107 So. 489.

The lower court awarded judgment for plaintiff and against the defendants for the 12 per cent. damages on the sums allowed, and allowed attorney's fees of $100 in each case. Act No. 168 of 1908 also provides for a reasonable attorney's fee in each case. The lower court fixed the fee as above stated, and we are not disposed to disturb that part of his judgment.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court in the case of Joe Dover v. Atlas Assurance Company of London, England, be affirmed, with all costs; and the judgment in the case of Joe Dover v. Home Insurance Company of New York be affirmed, with all costs; and judgment in case of Joe Dover v. Virginia Fire & Marine Insurance Company of Richmond, Va., be affirmed, with all costs; and that judgment in the case of Joe Dover v. North British & Mercantile Insurance Company of London and Edinburg be affirmed, with all costs.