## LYLES v. NATIONAL LIBERTY INS. CO.

## SAME v. SPRINGFIELD FIRE & MARINE INS. CO.

### No. 1861.

Court of Appeal of Louisiana. First Circuit.

June 14, 1938.

Hawthorn, Stafford & Pitts, of Alexandria, for appellants.

A. R. Lecompte, of DeRidder, for appellee.

DORE, Judge.

The above two suits were consolidated for the purpose of trial as the issues and facts in both cases are the same. Separate judgments were entered and separate appeals taken in each case. Both suits arise out of fire insurance policies, one for the sum of $800 with the first named defendant and the other for the sum of $1,000 with the second named defendant, on two separate houses destroyed by fire at the same time on April 15, 1937. Plaintiff ask-

ed for the statutory penalty of 12% against each company, and for attorney's fees. The trial court rendered separate judgments against each company for the amount of the policies with interest, but disallowed the claim for penalties and attorney's fees. Defendants appealed and plaintiff has answered the appeal, asking for an amendment of the judgments so as to allow the penalties and attorney's fees.

While separate records are made up in each case, yet, as the law and the facts are identical in each case, the two cases have been argued, briefed and submitted in this court together. The following reasons for judgment will apply in each case to conform to the original proceedings and the judgments rendered therein:

The issuance of the policies and the total destruction of the property by fire are admitted. Liability is denied on the ground that plaintiff was not the sole and unconditional owner of the property, and that the buildings destroyed were not on ground owned by plaintiff, the insured, in fee simple, as required by the policies; that on November 16, 1935, plaintiff, for a consideration of $750, sold the insured property to Doyle Brown, and Brown went into possession of same and said property was assessed to Brown as owner.

The record shows that plaintiff, on November 16, 1935, executed a warranty deed to Doyle Brown covering the lots on which the two houses were located, and on the same day and at the same time the parties entered into a collateral agreement as follows:

"The within agreement is entered into this 16 day of November A. D. 1935, by and between Hiram Lyles and Doyle Brown, Witnesseth:

"Hiram Lyles this day having executed a cash warranty deed to and in favor of Doyle Brown covering Lots 5 and 6 Block P, High School Park Addition, and the said consideration being represented by 25 notes for $10.00 each and 20 notes for $20.00 each, the first due December 15 1935 and monthly thereafter, and which deed and notes being deposited in the City Savings Bank & Trust Co., DeRidder, for collection. It is agreed and understood that upon the failure of the said Doyle Brown to pay 2 notes after their maturity it shall be optional with the said Hiram Lyles to declare the deed and notes null and void and is authorized to retain all amounts paid by the said Doyle Brown as rent.

"The parties hereto authorize the said City Savings Bank & Trust Company, DeRidder, upon the default as above stated to deliver said deed and notes to the said Hiram Lyles, and they to be held blameless in all matters."

At the time of the execution of the deed and agreement, the houses were insured and after executing the deed and agreement, plaintiff and Brown went to the local agent of the two defendant insurance companies and explained their transaction and presented the documents to the agent and requested the proper endorsement on the policies to meet the situation. The agent then informed the parties that plaintiff was still the record owner of the properties and that the insurance should be continued in plaintiff's name and placed an endorsement on each policy as follows: "Notice is accepted, without prejudice to this insurance, that the within described property is being sold under contract to Doyle Brown". Thereafter, the insurance continued to be written in the same form.

The papers were put in the designated bank and Brown paid several notes thereon and occupied one of the houses himself and rented the other. He also claimed the homestead exemption from taxation and the property was assessed in his name. In July, 1936, Brown defaulted by his failure to pay in accordance with the escrow agreement and plaintiff withdrew the deed, the agreement and the remainder of the notes. Plaintiff allowed Brown and the tenant to remain in possession of the properties, but collected some of the notes. The evidence is that the rental values of the two residences were about equal to the face of the notes collected. At the time of the fire, two of the notes were past due, and plaintiff had these documents in his possession at the time of the fire, but had not formally cancelled the contract with Brown as he had a right to do.

As Brown had defaulted in the payment of two notes, he could not force plaintiff to deliver the deed to him even though he had tendered the balance due. It was entirely optional with plaintiff whether he delivered the deed to Brown on his paying the balance. Plaintiff could have destroyed the deed had he desired as it was in his possession by reason of the default of Brown. Therefore, at the time of the fire the situation was that plaintiff was not only the record owner of the property, but Brown had lost whatever interest he might

have acquired in it under the contract of purchase. There was no change of title or interest in the property at the time of the fire as the deed deposited in escrow had come back into the possession of plaintiff by reason of the default of the purchaser. See Dover v. Insurance Co., 15 La.App. 132, 130 So. 828, and cases there cited.

It is contended that the only interest plaintiff had in the property was the balance due him by Brown on the contract, something over $500 at the time of the fire. It is true that plaintiff had not formally annulled the contract, but he had retaken possession of the deed and had tacitly cancelled it. He was under no legal obligation to protect Brown or turn over to him any of the insurance money, less the balance due on the contract. There is nothing to prevent plaintiff from discharging that moral obligation if he chooses to do so; indeed there is nothing to prevent any person from discharging any moral obligation toward another in such a way as he deems proper.

Under the situation as it existed at the time of the fire, plaintiff can be viewed in no other light than as the unconditional owner of the property. The houses insured were immovable by nature, and the valued policy law of this State, Act No. 135 of 1900, applies to the two policies, and the insurance companies are prohibited from questioning the value of the property which they voluntarily insured and on which they fixed a value in the policies which they issued. Hart v. North British & Mercantile Ins. Co., 182 La. 551, 162 So. 177; Tilley v. Camden Fire Ins. Ass'n, 139 La. 985, 72 So. 709.

It is true that the valued policy law does not prevent the insurer from questioning the interest of the insured in the property covered by the policy. This was so held by the Supreme Court in the case of Lighting Fixture Supply Co. v. Pacific Fire Ins. Co., 176 La. 499, 146 So. 35, and by this Court in the recent case of Chambers v. North British & Merc. Ins. Co., 175 So. 95. But the insurer is prevented from contesting the value of the property insured where the insured is shown to be the unconditional owner and the property is immovable by nature and is totally destroyed. There is quite a difference in permitting the insurer to show the lack of interest on the part of the insured in the property and in permitting the insurer to question the value of the property insured. The valued policy law prohibits the latter but does not prevent the former. If the property insured was not worth $1,800, the time for the insurer to protect its interest was when the policy was written. The value of the property cannot now be questioned in the face of Act No. 135 of 1900.

Counsel for defendants admit that if plaintiff is entitled to recover, he is entitled to recover the statutory penalty and reasonable attorney's fees as provided for in Act No. 168 of 1908. See Bell v. Security Ins. Co., 175 La. 599, 143 So. 705.

The judgments will be amended by allowing 12% damages on both policies, and by allowing $120 attorney's fees in the suit against the National Liberty Ins. Co. of America, and attorney's fees of $150 in the other suit, with legal interest on the face of the policies from judicial demand, and otherwise the judgments will be affirmed by separate decrees in each case.