McBRIDE, Judge.
On December 21, 1946, the plaintiff, who was a guest passenger in an automobile owned and operated by her husband, suffered certain personal injuries when the automobile collided with another owned by Rev. David C. Colony. She brought this suit solidarily against her husband’s liability insurance carrier, Rev. Colony, and his liability insurer, for her injuries, some of which are alleged to be of a permanent nature, plus medical expenses. After a trial in the court below, plaintiff recovered judgment in the amount of $250 against her husband’s insurer, and the suit was dismissed as to Rev. Colony and his insurance carrier.
Plaintiff applied for a new trial on the ground that the judgment was contrary to the law and the evidence, and after due consideration the trial judge granted a new trial because of “manifest errors on the face of the judgment.”
The cause was again duly docketed, and when the case was called for hearing some months afterward, it was submitted to the trial judge for adjudication upon the transcription of the testimony taken at the original trial. No additional evidence was adduced. Judgment was then rendered in favor of plaintiff for $250 against all of the defendants jointly and in solido. Plaintiff has taken this appeal, and whereas the defendants have neither . appealed nor answered plaintiff’s appeal, the only question before us for determination is the matter of quantum, except for a legal question which we now proceed to discuss.
*722 It appears that plaintiff, during the early part of 1947, was a private patient of Dr. Joseph Stamm, who testified by deposition as a defense witness on the original trial, and during the course of his deposition Dr. Stamm related the case history which Mrs. Chandler had given him at the time she was under his care as a patient.
When the case, was called at the second hearing, plaintiff’s counsel in agreeing to submit the matter on the testimony taken at the original hearing did so “with one exception.” Counsel then objected to the admissibility of that part of Dr. Stamm’s testimony pertaining to the case history which Mrs. Chandler had given him while she was his patient, on the ground that such was a privileged communication between physician and patient and inadmissible as evidence. The objection was overruled and the matter was taken under advisement by the court.
We think the judge was correct in his ruling on the objection.' Not only was no objection originally made to Dr. Stamm’s testimony, but plaintiff’s counsel, who was present when Dr. Stamm’s deposition was taken, specifically waived any question of privilege. -The deposition shows that when the case history purportedly given by plaintiff was sought to be elicited from Dr. Stamm, the following colloquy ■ between counsel ensued:
“Mr. Wingerter :
“Of course, I want to renew my objection to all of this testimony.
“Mr. Johnson:
“Except as to the question of ‘privilege’; is that right?
“Mr. Wingerter:
“Yes; that’s correct.”
Plaintiff’s counsel also complains that the trial judge, at the second trial, after overruling the aforesaid objection, refused to permit him to call plaintiff as a rebuttal witness.
The complaint made by plaintiff is not well founded. The testimony given at the original trial had been reduced to .writing and was filed as part of the record, and it was within the sound discretion of the judge to permit either party to recall any witness for further- examination. See Act No. 247 of 1908 (now LSA — RS- 13:4261). It would seem to us that plaintiff had ample opportunity originally to rebut Dr. Stamm’s testimony, and there was no abuse of discretion by the trial judge in refusing to permit such rebuttal after the case had been submitted on the second trial.
It is undisputed that Mrs. Chandler, who became hysterical as a result of the accident, was taken in a dazed condition directly from the scene to the Baptist Hospital in New Orleans, where she was seen the same day by her private physician, Dr. Simon J. Rosenthal. She was found to be suffering from shock, contusions to the left eye, knees, left ear, and left side of head and face, accompanied by “the usual concussion that occurs in these cases.” Dr. Rosenthal, after shaving her eyebrow and putting in several sutures to the laceration above the eye, had X-ray pictures made of the patient’s head and face, which all showed negative for fractures. The testimony shows that Mrs. Chandler remained in the hospital for three days or so, when she was permitted to return to her' home for the Christmas holidays. Complications then developed when the laceration above the eye..became infected, causing a swelling of the head and face on the left side. Plaintiff was again taken to the hospital, where she remained for eleven or twelve days, during which time numerous injections of penicillin and other applications were administered continuously.
Defense counsel maintain that the laceration and bruises suffered by Mrs. Chandler were of a minor nature. Indeed, in argument they characterized the injury to her eye as merely a “black eye.” From photographs of Mrs. Chandler taken during her stay in the hospital, it appears that she suffered a severe and ugly bruise to her left eye and face, the eye being completely closed, and undoubtedly the blow which she received in the accident was a severe one. The pictures show what appears to be a strip of adhesive tape above the left eye. The testimony of plaintiff and her physician, that the contusions and lacerations *723 of the eye were painful and of a quite severe nature, is wholly unrefuted.
Mrs. Chandler also claims that her gall bladder became ¡dislocated, necessitating an operation in July of 1947. We might say here that there is absolutely no evidence in' the record tending to show that the gall bladder removal was necessary because of her injuries. Dr. Simon J. Rosenthal testified that he performed the operation, but there is no evidence connecting the operation with plaintiff’s injuries.
There is testimony regarding an alleged impairment of vision in plaintiff’s left eye. It seems that Dr. Simon J. Rosenthal referred the patient to Dr. Jonas W. Rosen-thal, an oculist, in June, 1947, for an examination which was felt necessary because the patient complained of “spots in front of her eyes.” The eye specialist found that Mrs. Chandler had what he termed numerous vitreous opacities, but he could not positively attribute this condition to the accident. The plaintiff had been a patient of Dr. Jonas W. Rosenthal before the accident. He first fitted her with glasses in 1933, which were changed in July, 1940, at which time she complained of headaches, was nervous and dizzy. The last time Dr. Rosenthal saw plaintiff was on July 3, 1947.
The bulk of the medical testimony pertains to an alleged permanent injury to plaintiff’s left ear. According to Dr. Simon J. Rosenthal, about a month after the accident Mrs. Chandler complained of severe pains in the left side of her head and face, and of a “terrible roaring” in her left ear, which he described as tinnitus aurium. His opinion was that the patient’s complaint resulted directly from the injuries received in the accident.
Dr. Simon J. Rosenthal later referred the patient to Dr. Joseph Stamm, an eye, ear, nose, and throat- specialist, who .examined her on February 6, 1947,- at which time her complaints were the ringing noise in the left ear, with an impairment of hearing, and extreme agitation. Dr. Stamm testified that Mrs. Chandler, in giving her case history, stated that the complaints had been present for about twelve years, and that she had been previously treated for “rhinitus and ear trouble.” Dr. Stamm’s examination disclosed some blood in the left ear around the rim of the external canal, but the ear drum itself was not punctured.
Dr. Stamm subsequently examined Mrs. Chandler on behalf of the defendants. In November of 1948 he found that she showed a subjective symptom of marked pain in the region of the left mandibular joint. There were no significant findings in the left ear, nose, sinuses, or throat. The patient was wearing an orthodontic appliance for correction of the bite. The capacity to hear speech was below normal, but Dr. Stamm’s opinion was that the impairment to the sense of hearing did not result from the accident, but was probably due to other causes, which he enumerated.
Plaintiff was next examined on behalf of defendants by Dr. Shirley C. Lyons, who appeared as a defense witness. At the time of the examination, in March of 1948, plaintiff complained of the noise in her left ear, severe nervousness, and the inability to leave home alone. Dr. Lyons stated that he did not consider himself qualified to make an examination of the eye ground or the ear itself, and recommended to Mrs. Chandler that she have a complete neurological examination.
The next examination was made by Dr. Howard H. Karr, who specializes in the field of nuero-surgery. Although the record does not definitely ■ show who sent plaintiff to Dr. Karr, we assume that she was sent to this physician by the attorneys for the defendants. Dr. Karr, from his examination of November 23, 1948, could discern no neurological abnormalities. While there was a marked disproportion between the subjective complaints and the objective findings, his opinion was that the history of the case did not support a diagnosis of concussion or shock, nor was there anything to suggest a dislocation of the temporomandibular joint, nor any evidence of trauma to the left eye, except a scar above the eye.
Three, other doctors treated Mrs. Chandler after the accident, but none, of these physicians were produced as. witnesses .in, the case.
*724 During the course of his testimony, Dr. Simon J. Rosenthal stated that he had been treating plaintiff for about twenty-two years and that prior to the accident she enjoyed good health, having had only an abdominal operation about fourteen years before,, and other “minor things.” However, according to the history given by Mrs. Chandler to Dr. Stamm, she had experienced the ringing noise in the left - ear, the impairment of hearing, and extreme agitation for about twelve years, and had also been treated previously for rhinitis and ear trouble. The testimony of Dr. Jonas W. Rosenthal also clashes with the statement of previous good health made by Dr. Simon J. Rosenthal. The former stated that Mrs. Chandler came to him in July, 1940, long-prior to the accident, complaining that she had headaches, was nervous and dizzy.
After carefully analyzing and scrutinizing the medical evidence in the record, we readily conclude that Mrs. Chandler has not proved that she sustained any permanent injuries; her condition, we believe, resulted wholly from pre-existing causes. The law imposed the burden of proof upon plaintiff, and the evidence does not preponderate to the effect that she suffered permanent injuries.
Mrs. Chandler has been for some years a very nervous type of person, and her attorney argues that the duty of abstaining from injuring another is due to the weak, the sick, and infirm equally with the healthy and strong, and that the accident unquestionably aggravated plaintiff’s peculiar physical condition, which entitles her to recover therefor.
 It has been said that a tort feasor must take his victims as he finds them. The jurisprudence is well settled that in an action sounding in tort the fact that an injured person was previously suffering from damages or ailments does not prevent recovery for such additional suffering or disability as may have resulted from the accident. See Valence v. Louisiana Power & Light Co., La.App., 50 So.2d 847, and the cases therein cited. We are convinced thát the accident did not initially cause the condition of which Mrs. Chandler complains, nor can we say that the accident aggravated her pre-existing condition.
As we said at the outset, plaintiff was injured by the impact of the two automobiles, which necessitated hospitalization and caused physical pain and mental anguish. In addition, there remains over plaintiff’s left eye a visible scar, the existence of which was admitted by the defense medical experts, Drs. Lyons, Karr, and Stamm.
 ’ The matter of assessing damages for personal injuries is largely within the discretion of the trial court, as no rule or standard prevails, but considering the nature of the injuries which were proved, we unhesitatingly conclude that the amount of $250 allowed by the trial judge was grossly inadequate. We believe that the amount should be increased to the sum of $1,000.'
Claim is also made for medical and hospital expenses, which must be disallowed, for it is too well settled to require citation of authorities that the husband, as head and master of the community, is liable for such expenses, and that he alone can recover therefor.
Plaintiff also prayed to have taxed as costs against defendants the sum of $400, which she alleges represents the fees of her medical experts. The trial judge was correct in disallowing this claim. The only two experts appearing for plaintiff were her attending physicians, the Drs. Rosenthal, and their testimony is wholly devoted to facts. Unquestionably any litigant has a right to summon so-called experts, but the taxing of their fees and expenses as costs should be supervised most carefully, and it is only where it is manifest that the testimony of the witnesses is in reality necessary to elucidate some technical or scientific subject that their fees and other expenses should be taxed as costs. Levy v. McWilliams, 13 La.App. 444, 129 So. 170.
It is ordered, adjudged, and decreed that the judgment appealed from -be amended so as to allow plaintiff a recovery of $1,- *725 000, and as thus amended, and in all other respects, the judgment appealed from is affirmed. Defendants are condemned to pay the costs of both courts.
Amended and affirmed..