242 So.2d 310 (1970)
GIBSLAND SUPPLY COMPANY, Inc., et al., Plaintiffs-Appellees,
v.
AMERICAN EMPLOYERS INSURANCE COMPANY, Defendant-Appellant.
No. 11517.
Court of Appeal of Louisiana, Second Circuit.
December 11, 1970.
Rehearing Denied January 13, 1971.
Writ Refused March 10, 1971.
*311 Goff & Goff, by A. K. Goff, III, Ruston, for defendant-appellant.
Shaw & Shaw, by W. M. Shaw, Homer, for plaintiffs-appellees.
Before AYRES, BOLIN and PRICE, JJ.
En Banc. Rehearing Denied January 13, 1971.
BOLIN, Judge.
Plaintiffs, Gibsland Supply Company and Gibsland Bank, both domiciled in Bienville Parish, Louisiana, brought this action against American Employers' Insurance Company under a fire insurance policy to recover for fire damage to a building located in Gibsland and owned by Gibsland Supply. The policy was issued to the Supply Company and contained a "loss payable" clause showing the plaintiff bank as mortgagee. On December 6, 1967, formal proof of loss, with estimate of damage to the building and contents, was submitted to the insurance company which denied liability on the ground that plaintiff company had no insurable interest in the building on the date of the fire. Denial of the claim generated the present suit to which defendant filed an exception of no right of action on March 26, 1968. This exception was argued and overruled and on October 17, 1968, defendant filed a third party demand against Nomie M. Namie who was alleged to be the owner. Exceptions of no cause and no right of action to the third party demand were sustained and the case went to trial on the merits. Judgment was rendered in favor of plaintiffs and against the insurance company for $7,664.99 as damage to the building, $919.79 as penalties, and attorneys' fees of $4,500. Expert witness fees and costs were also assessed against the defendant. In addition, an award of $800 was granted for loss or damage to the contents of the building. Defendant appeals.
Defendant alleges the trial court erred in holding Gibsland Supply had an insurable interest on the date of the fire, October 9, 1967; in awarding excessive damages; in holding defendant's actions were arbitrary and capricious so as to allow an award for penalties and attorneys' fees.
We shall recite only the facts we deem essential to a disposition of these alleged errors and dispose of them in the order named.

*312 I.
The insurance policy referred to was issued on June 14, 1967, for a three-year period and covered the contents and the one-story brick building owned and occupied by the Supply Company as a general merchandising store. On the night of October 9, 1967, the building and contents were heavily damaged by fire of unknown origin. It was undisputed that, about ten days before the fire, the officers of the Gibsland Supply Company, a family-owned corporation, had adopted a resolution authorizing Mrs. Jessie Sutton, president, to sell the building in question to Nomie M. Namie for the price of $10,000 cash to be paid upon delivery of the deed. In furtherance of this resolution Mrs. Sutton, who was frequently absent from town, signed a cash deed on September 26, 1967, reciting $10,000 as cash consideration and providing that delivery of possession of the premises was to be on or before November 1, 1967. However, this deed was to be held by Fred Sutton until payment of the purchase price and, in fact, was never completed nor delivered to Namie. Sutton testified, as did Namie, that on October 9, the day of the fire, Namie gave Sutton a check for $3,000 which, it was agreed, would not be deposited for collection until Namie had an opportunity to cover it at the bank on the following day. After the fire, Sutton went to Namie and asked him if he still wished to purchase the building and Namie replied he did if the building was restored to its former condition.
On the morning following the fire defendant's adjuster, James M. Nichols, made a complete investigation of the damage, was furnished a copy of the above described papers and was given written statements by Fred and Don Sutton, as well as a statement by Namie. This latter statement, which was prepared by Nichols and initialed by Namie, stated:
"* * * I had bought this building and had made a payment to Mr. Fred Sutton, Jr., Don Sutton and Mrs. Fred Sutton, Jr. This payment was $3,000 and the agreed price was $10,000. The deed has already been drawn up and the building is in my name. I paid the money to them yesterday * * *" (Namie later denied that he had said he had bought the building but had said he "was buying it".)
On or about November 30, 1967, Gibsland Supply procured an estimate of the cost to repair the damage and incorporated this estimate into a proof of loss which was forwarded to defendant with a demand letter on December 6, 1967. On December 12, 1967, Don Ellis, defendant's superintendent of claims for the Ruston area, answered the letter, stating:
"As concerns the loss to the building only, it is our position that Gibsland Supply Company, Inc. had no insurable interest in the building at the time of this loss. It is also our position that the proof of loss as filed with this office along with your letter of December 6, 1967, declares damages in excess of those actually sustained.
"Accordingly, for these and other good reasons, we must reject the proof of loss as filed."
In response to this letter plaintiffs directed another letter to defendant demanding payment of the damages "actually sustained" within seven days or suit would be filed. This demand was likewise refused, defendant maintaining its position "remained the same."
It is apparent that defendant relied upon the statement of Namie, together with the copies of the resolution and deed, to substantiate its position that a completed sale was effectuated either on the date or prior to the fire, leaving Gibsland Supply with no insurable interest.
In refutation of this conclusion, plaintiffs called as witnesses the Suttons and Namie and their testimony establishes there was no intention on the part of either the vendors or the vendees that title *313 to the building should pass on October 9, 1967. Further, execution of the deed had not been completed, the recited consideration had not been paid, and Namie had only the right of possession after that date.
The trial judge rendered a well-written opinion and explored fully each question with which we are here confronted. In disposing of the issue of plaintiffs' insurable interest, the trial judge held:
"A casual examination of the evidence in this case reveals the complete fallacy of defendant's contention of no insurable interest. The evidence shows that there was no complete sale in this case, because Mrs. Jessie Sutton as president of the Gibsland Supply Company, Inc., was authorized to sell the building in question only upon receipt of the sum of $10,000.00 in cash, which condition was never fulfilled, and secondly neither the proposed seller nor the proposed purchaser considered this sale to have been made and both understood and agreed that it was not to be completed until the money had been paid."
The court then cited at length from the rather early case of Dover v. Atlas Assurance Company of London, England (2 Cir. 1930), 15 La.App. 132, 130 So. 828. We consider particularly appropriate the following language from pages 832, 833 and 834 of that case:
"In the case of Wells v. Blackman, 121 La. 394, page 413, 46 So. 437, 444, the Supreme Court of this state cited with approval, the following extract from `Benjamin on Sales,' Am.Ed. 330: `If it can be inferred * * * from the acts of the parties and the circumstances surrounding the transaction, that it was the intent that delivery and payment should be concurrent acts, the title will be deemed to have remained in the vendor until the condition of the payment has been complied with'citing case of Kessler & Co. v. Manhein, 114 La. 619, 38 So. 473.
"This principle of law covers the case before us completely, for we have the uncontradicted testimony of both the vendor and vendee that delivery of the deed should be concurrent with the payment of $12,000, and the further evidence of the written letter to that effect attached to the deed.
"* * * No complete title of ownership passes to the purchaser at a cash sale until he has paid the price thereof."
* * * * * *
"While a deed is in escrow, awaiting the performance of conditions precedent to the delivery thereof by the vendor to the vendee, there is no change in the title or right of possession to the property, although the purchaser occupies it with the consent of the vendor in anticipation of completing the contract of sale and purchase.
"Where in such case, the vendor has a fire insurance policy on a house situated on the premises, and the house is destroyed by fire while so occupied and before the conditions of the escrow are performed, the hazard from fire not being increased, the right to recover on the contract of insurance is not forfeited."
* * * * * *
"In the case of Trichel v. Home Insurance Company, 155 La. 459, 99 So. 403, the Supreme Court of this state held that, although a promise to sell had been entered into and part of the purchase price paid, and a number of installments had been paid, the property was destroyed by fire before she had paid the number of installments required under the contract to entitle her to a deed, and that there had been no change in interest, possession, or title such as to avoid the fire insurance policy held by her vendor.
"Under the facts of this case and the jurisprudence of our courts, we are forced to hold there was no change in interest, *314 possession, or title in the property covered by the insurance policies prior to the date of the fire, and the judgment of the lower court in that respect is correct."
Appellant insurance company urges the sale "is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid." (La.C.C. Art. 2456) That article deals with the sale of movables or with a contract for the sale of land, the latter of which may be enforced between the parties. When applied to the sale of land, if in writing, it may give either the vendor or the vendee an action for specific performance, but ownership does not pass until such action is taken.
In Ober v. Williams, 213 La. 568, 35 So.2d 219 (1948), the Louisiana Supreme Court had this to say:
"The proposition advanced by plaintiff has been many times made and we find consistent rejection of it in a long line of authorities. In most of the adjudications, the party stressing the contention (that a promise to sell is a sale) placed much reliance on Article 2462 of the Civil Code which provides that `A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.' But, in every case where the court has been faced with the question of determining ownership of the thing prior to the passage of title, it has consistently stated that the promise did not effect a transfer of ownership to the promisee."
(See cases cited)
In the instant case neither the vendor nor the vendee claims that the sale was complete; further, Namie's offer to complete the sale, i.e., pay the balance of $7,000, was conditioned upon vendor's restoring the building to the state it was in prior to the fire, which condition is as yet unfulfilled.
We conclude no sale had been consummated and plaintiff, Gibsland Supply Company, retained title to and ownership of the property. As a consequence, defendant's rejection of the claim on the basis there was no insurable interest was unfounded.
Parenthetically, and prior to discussion of the last two principal issues, we find defendant's complaint, that the Gibsland Bank failed to submit a proper proof of loss showing its interest under the mortgage, is completely without merit. The proof of loss submitted by plaintiffs was submitted on behalf of both; the policy rider names Gibsland Bank as mortgagee under the loss payable clause; no effort was made by defendant to determine the amount outstanding in favor of the mortgagee, rather the claim was summarily rejected as to both plaintiffs. It was only after suit was filed that a tender of $3,028.52 was made to the bank, which was the amount American estimated for damages to the building, less the "betterment" which it claimed would result from repairs thereto. There are numerous Louisiana cases holding that where an insurer has been fully apprised of the insured's claim, has investigated it and refused payment on the ground that insured lacked an insurable interest in the property, submission of a proof of loss form is unnecessary and the insurer cannot rely upon an alleged defect in a proof of loss to insulate it from liability. Riddle v. Allstate Insurance Company, (La.App. 4 Cir.1967), 203 So.2d 820, 823, and cases cited in footnote.

II.
We next focus our attention on the propriety of the lower court's award for the estimated cost of repairs to the building.
*315 Four contractors, all of whom were accepted as qualified experts, testified with regard to their estimates which varied from $7,974.79 down to $3,637.40. The most completely itemized estimate was made by plaintiff's witness, H. B. Lee, for Howard Lumber Company. This witness had examined the building shortly after the fire and had revised his estimate for the trial some two years later. The trial judge reviewed the testimony of these contractors, all of whom he found to be qualified and sincere. However, he pointed out the many discrepancies in the estimates, and the apparent reasons therefor. In conclusion, he stated:
"However, we were especially impressed with the testimony of Mr. H. B. Lee, the estimator for Howard Lumber and Supply Company who testified for the plaintiffs. In my opinion his testimony, both by virtue of his expertise as an estimator (which has been employed in the past by both parties to their suit) and his complete fairness (illustrated by his testifying as a witness for both the plaintiff and defendant in this case) is entitled to the greatest weight since he had the opportunity to examine the building immediately after the fire and has been constantly in touch with the changing costs and other factors affecting repair work in the area wherein this building is situated.
"In my opinion the preponderance of the evidence supports plaintiff's demand for damages to the building in the sum of $7,664.92.
"In addition to fire damage to the building hereinabove discussed, plaintiffs prayed for damages to contents in the sum of $1000.00. An examination of the evidence adduced reveals that immediately after the fire plaintiffs and defendant's adjuster entered an agreement as to the value of the contents of the building which agreement set the amount of $800.00 of fire damage to the contents. There is evidence in the record which indicates that many items such as display counters, gondolas, etc., were not considered in this agreement. However, a study of the transcript of evidence reveals that there was no testimony as to the value of these items omitted and as a result we have no evidence on which to base an award for such omitted items. Therefore, plaintiffs are entitled to an award of $800.00 for fire damage to the contents of their building."
Defendant insurer argues strenuously that the lower estimate, submitted by its witness, should have been accepted and further, that $2,000 for "betterment" should be deducted from this lowest estimate.
Louisiana Revised Statutes, Title 22, Section 695, subsection B, delineates the rule with regard to fire damage to a building which is partially destroyed:
"Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard Time, on the first day of August, 1964, on any inanimate property, immovable by nature or destination, situated within the State of Louisiana, the insurer shall pay to the insured, in case of partial damage, without criminal fault on the part of the insured or the insured's assigns, such amount, not exceeding the amount for which the property is insured, at the time of such partial damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition; * * *." (Emphasis added)
We have thoroughly studied the statute and the cases cited by defendant which reputedly require application of the test of "cost of restoration less depreciation" to partial loss to a building by fire. We are convinced that the valued policy provision quoted above does not require such a deduction. Therefore, such a rule would have to be established by the jurisprudence. *316 Of the numerous cases cited by defendant in support of this last contention it should be pointed out that all such cases decided by the Louisiana State Courts were dealing with tort claims in which the measure of damages is different from that established by the Insurance Code, La.R.S. 22:695, supra. In Reliance Insurance Co. v. Orleans Parish School Board, (La.App.5 Cir. 1963), 322 F.2d 803, the United States Court of Appeal relied on authorities other than Louisiana decisions and held that replacement-cost-less-depreciation is the standard to be applied in determining the insurance owed in cases of partial loss. We are unimpressed with this argument. The statute makes no mention of depreciation and, in fact, it has not been shown by valid evidence that the building here in question had depreciated from the time the policy was issued in June, 1967, until the time of the fire in October, 1967. Furthermore, Section C of La.R.S. 22:695 allows the insurer, at its own expense and without contribution on the part of the insured, to replace the property, immovable by nature or destination, partially damaged or totally destroyed.
Since the policy coverage on the building was $10,000 and Namie had contracted to buy the building for that exact amount, we find no error in the lower court's award of the full sum necessary to place the building in substantially the same condition it was in at the time of and immediately preceding the fire which damaged it.

III.
Finally, we shall examine the question of the award of penalties and attorneys' fees.
Since American Employers Insurance Company had in its possession the copy of the resolution passed by the board of directors of Gibsland Supply, it knew, or is charged with the knowledge, that Mrs. Sutton could not have perfected the deed and passed title to the building except upon receipt of the entire $10,000 cash consideration. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957).
Therefore, American, knowing that only $3,000 of the consideration had been paid, must have known that what is claimed to have been a sale, so as to divest insured of an insurable interest, could not have been a sale since it would have been ultra vires. Bright v. Metairie Cemetery Association, 33 La.Ann. 58 (Orl.1881); Bradshaw v. Knoll, 132 La. 829, 61 So. 839 (1913); Snell v. Amite Oil Company, 178 La. 176, 151 So. 70 (1933); Buckley v. Woodlawn Development Corporation, supra.
We agree with the trial judge that the evidence leaves no question that the failure of American to pay the damages in question was completely unjustified; further, that the failure to tender the amount of "actual damages" within sixty days following receipt of proof of loss was arbitrary and capricious and a violation of the mandate in Louisiana Revised Statute, Title 22, Section 658:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid *317 or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125."
As regards the reasonableness of the amount awarded as attorneys' fees, we find the record amply supports the following conclusion of the trial judge:
"On the question of attorney's fees it is noted that this was a hard fought case. The defendant put up a tenacious, stubborn, delaying and skillful defense. The record is replete with exceptions, motions and continuances, third party pleadings, request for admissions and similar legal stratagems. All of this greatly increased the time consumed in the prosecution of the case.
"Plaintiffs offered the testimony of an attorney John B. Benton, Jr., a well known trial attorney of this area, on the question of attorney's fees.
"Mr. Benton, who had spent considerable time reviewing the fire, checking the pleadings, and discussing the matters involved in this case testified that, based on the number of hours that were involved in the preparation and trial of the case, a fee of between $4,500.00 and $5,000.00 would be fair and just.
"In my opinion the sum of $4500.00 would be a just and equitable fee in this instance and would be substantial justice between the parties."
Defendant contends it tendered the amount it considered due under the evidence and therefore, if this court affirms the finding that penalties are due, the 12% penalty should have been assessed only on the difference between the amount tendered and the amount of damages found to be due. We find no evidence that an absolute and unconditional offer was made with respect either to the damage to the building or its contents; therefore, the 12% penalty was properly assessed on the award of $7,664.94. It is also contended the court erred in awarding expert witness fees to the attorney, Mr. John Benton, who testified on the value of services rendered by plaintiffs' attorneys. Mr. Benton spent considerable time reviewing the entire file and was required to travel from his home to Bienville Parish in order to testify. He was not present in court except for the purpose of testifying as an expert witness. We find no error in this portion of the judgment.
For the reasons assigned the judgment of the lower court is affirmed at defendant's cost.