BEER, Judge.
The automobile accident which precipitated this law suit took place at one of the most unsatisfactory and unsafe so-called interchanges in the New Orleans Metropolitan Area.
Plaintiff-appellee Carl Galle and his wife Terrie Galle were riverbound on I — 10 approaching the St. Charles Avenue down ramp by which they intended to exit 1-10. Their automobile was struck in the rear by the automobile of defendant-appellant, Mrs. Linda Bower, also riverbound, which had just entered I — 10, from the Dryades Street up ramp.
We find no error in the trial court’s determination that, of the two drivers involved, responsibility for the accident must rest upon Mrs. Bower, although we recognize that her actions were probably necessitated, at least in part, by the poor design of the “interchange.” It is likely, as defendant-appellant avers that Galle was proceeding at a speed slower than the minimum authorized speed limit; but it is also probably true that he had no choice because of traffic congestion. Mrs. Bower, unfortunately obliged to be looking out for more traffic than an average motorist should have to successfully contend with, miscalculated the speed at which Galle was moving and struck him from the rear. Accordingly, we affirm the trial court’s determination of liability.
Neither of the plaintiffs were seriously injured, both suffering from more or less “mild to moderate” conventional whiplash type injuries which often seem to leave some residual complaints that continue in various forms at least up to the time of trial.
The accident happened on August 20, 1972 and by early October Mr. Galle was completely free of objective symptoms though he still had very minor and occasional subjective complaints until early December. Mrs. Galle’s objective symptoms were of the same duration as her husband’s, but her subjective symptoms did persist somewhat longer although her treating physician, Dr. Grunsten, found that she had “overcome the influences of her injury and was experiencing only minor subjective sensations of discomfort” as early as October, 1972. Her subjective symptoms were generally described as “occasional sensations of discomfort” in the left shoulder and left arm and “tenderness” and occasional localized pain of the brachial plexus. In addition to various stipulated special damages, the trial court awarded Mr. Galle $3,000 and Mrs. Galle $4,500.
Although we believe that in setting the general damage awards the trial judge may have unintentionally felt obliged to justify his pretrial settlement recommendaations *67 *, we nevertheless find that the “much discretion” accorded to the trial court in quantum awards has not been clearly abused.
We are unable to agree that the record supports a conclusion that plaintiff is entitled to a $600 “depreciation” award for his 1972 Ford LTD automobile (in addition to the $250 deductible).
No qualified expert testified in support of this finding after having made a complete examination of the fully repaired automobile. Mr. Pivach, called in connection with the alleged depreciation, had no expertise in the field—being simply a property claims adjustor with All State Insurance Company who had adjusted the collision loss. Yet, the court observed to plaintiff’s counsel:
“Qualify him as an expert and give him a fee while you are at it.”
When defense counsel objected to the witness being summarily qualified as an expert because his examination of the automobile in question had not been in any way involved with a determination of depreciation, the court stated:
“I vehemently disagree as I have with All State and their claims policy—As vehemently as I disagree with All State and their claims policy where they hardly ever settle anything and make us come to Court, I can’t look with jaundice eye on their whole operation and certainly this young man in my opinion is an expert in the field of automobile estimation.
“No one has the market cornered in this community on experts. This gentleman works for a national automobile insurance company. The Court is of the opinion that he is definitely an expert in the field of automobile estimation.” (Emphasis ours.)
Mr. Pivach acknowledged that he had not made an examination of the automobile for any purpose other than to adjust *68 the claim for its collision damage. He was not even concerned with the claim for depreciation. As this court stated in Delpido v. Colony, 52 So.2d 720 (La.App.1961):
“ * * *. Unquestionably any litigant has a right to summon so-called experts, but the taxing of their fees and expenses as costs should be supervised most carefully, and it is only where it is manifest that the testimony of the witnesses is in reality necessary to elucidate some technical or scientific subject that their fees and other expenses should be taxed as costs. * *
Also, in Rizzuto v. Employers Liability Assurance Corp., 152 So.2d 857 (La.App. 4th Cir. 1963) we held that no expert fee was due a witness who testified to facts which he became aware of in his ordinary and normal work. See also: Burch v. St. Louis Fire & Marine Insurance Company, 235 So.2d 218 (La.App. 4th Cir. 1970); Morgan v. Taxicab Bonding Association, 204 So.2d 642 (La.App. 4th Cir. 1967).
Plaintiff’s counsel then proceeded to qualify Mr. Carr, a used car salesman, as an expert in the field of automobile valuation. When this individual’s expertise and knowledge of the matter at issue (i. e. determination of depreciation) was objected to by defense counsel, the court stated:
“Somebody goes out to the track and bets on horses for five years, that doesn’t make them an expert. Buying and selling horses, it depends on what phase they are betting, but just betting in the blind, you have to depend on their knowledge of blood lines et cetera, and betting for five years with the assistance of the knowledge of horses, conditions of races and purses, et cetera — •”
Thereupon, this witness was qualified as an expert by the court.
Mr. Carr had never seen the car in question before the accident and after the accident had made only a sufficiently complete examination of it to state that he would reject it as a prospective purchaser because it was “remade.” He at first specifically withheld putting any valuation on the car because he had already concluded that he didn’t want it on his lot. He further acknowledged that he had only seen the car before the “ridge” or “lump” across the back floorboard was fixed and never after this important item had been repaired. At this juncture, the court took over the interrogation of the witness to elicit testimony from him regarding the alleged depreciation.
When counsel again objected, the court stated:
“I don’t know who we would bring in, you know, I guess bring the writer of the Blue Book in. I don’t know what is so Socratic about the Blue Book.
“This man in my opinion, I say has enough; it is obvious that he has enough expertise knowledge in the estimation of the car prices.
“We have gone over that.
“The Court will give a fee of one hundred dollars for the expert testimony of Mr. Carr.”
We conclude that Mr. Carr was improperly designated as an expert and that this fee must be disallowed.
Accordingly, the $600 awarded for depreciation must be disallowed as must the expert fees of $100 each to Mr. Pivach and Mr. Carr. Likewise, the higher than usual expert fee paid to Dr. Dugas simply because he was obliged to wait in the hall while the trial judge personally spoke at length to a representative of the defendant’s claim department by long distance telephone in St. Louis must be reduced from $200 to $125.
*69 The other items of special damages are stipulated.
The judgment is amended as follows:
In favor of plaintiff Carl Galle in the full sum of $3,644.66; in favor of plaintiff Terri D. Galle in the full sum of $4,836.72.
The expert fee of Dr. Dugas is reduced to $125.00 and the expert witness fees to Mr. Pivach and Mr. Carr are disallowed.
In all other respects, the judgment is affirmed.
Amended and affirmed.

 The record contains the following:
1. “THE! COURT:
“Let the record reflect for what it is worth that it is now twenty of two and we began a pretrial in this matter at eleven o’clock. After extensive discussions with counsel for both sides, the Court thought that the settlement of eighty-five hundred dollars was a reasonable settlement.
“The Court, in all of its sincerity, at this stage of the proceedings, does not know how the award will be much less or more than this amount. Unfortunately for these dear people, the defendants, who bought the insurance with these people, the judgment may go over ten thousand dollars, of which they will have to pay out of their pockets.”
1A. “THE COURT:
“Let the record reflect for what it is worth that this Court is of the opinion from its discussions with both Counsel and from its discussions with the attorney, a house counsel for the defendant company in St. Louis, Miss Serrie [sic], that the defendant is being arbitrary and unreasonable in not settling this case for the benefit of their insured, who paid them premiums.
“For what it is worth, this Court is of the opinion that in the event this Court grants, and does not know if it will grant, but if it does grant a judgment in excess of the ten thousand dollars, then this Court is of the opinion that the defendant company should pay the overage, because it is of the opinion they have been not only arbitrary and unreasonable, but from my discussions with the people in St. Louis, there are no basis [sic] for the conclusion of which they put a sixty-five hundred dollar reserve on this case, considering among other cases of which I cited and the case that I was affirmed was the case of Polits [sic] versus Millers Mutual Fire insurance of Texas [La.App.], cited in 267 'Southern 2nd, 214, in which I gave an amount which I think will be comparable in this case if not in excess.
“Let me parenthetically mention it is unfortunate that the legislature does not pass a law in this state which would require the insurance carrier, if they make a mistake of judgment, to have to pay the overage. “But, the law says they must be proven arbitrary and capricious.
“These defendants bought their policy for five-ten thousand dollars coverage. The case can be settled for eighty-five hundred dollars and then they would owe nothing and the insurance company turned them down.”