PRESTON H. HUFFT, Judge Pro. Tem.
Plaintiff-appellant, Richard J. Arnold, is the owner of rental property, which was damaged by fire on March 19, 1983. The defendant-appellee, Liberty Mutual Insurance Company, insured the premises with policy limits of $27,000.00, plus rental value coverage up to $2,700.00, subject to a $100.00 deductible.
On July 13, 1983, plaintiff filed suit for the policy limits of $27,000.00, $2,700.00 rental value, penalties, attorney’s fees and all costs. Upon the conclusion of a two day trial, the trial judge assigned detailed oral reasons and awarded the plaintiff $25,-968.81 for damages and rental value, minus a credit of $11,907.90, a statutory penalty of 12% on $14,050.91, attorney’s fees of $2,500.00, and an expert witness fee of $300.00 in favor of Donald J. Kennedy with legal interest thereon from date of judicial demand until paid. The judgment was arrived at in the following manner — the acceptance by the court of the Donald J. Kennedy, General Contractor, estimate of the damages in the amount of $34,368.81, less a depreciation allowance of $9,000.00, rental value of $600.00 and the deduction therefrom of a $11,807.90 payment by defendant in July 1983 and the $100.00 deductible.
Plaintiff lodged this appeal seeking to increase the award for damages and rental value to the policy limits of $27,000.00 and $2,700.00 respectively, to increase the attorney’s fees for handling the matter on the trial level to $10,000.00 and an additional amount for handling the appeal, to have an expert witness fee awarded in favor of each of the five expert witnesses he called in addition to Donald J. Kennedy and to have the 12% penalty applied to the $11,-807.90 payment he received in July 1983. The defendant did not appeal.
At this stage of the proceedings, plaintiff and defendant acknowledge that the fixing of damages to the premises caused by fire in the amount of $34,368.81 was within the much discretion afforded the trier of fact. However, plaintiff does object to an allowance for depreciation when damages are awarded for a partially damaged structure as a result of fire.
An allowance for depreciation is not permitted under Louisiana’s valued policy law with regard to fire damage to a building, which is partially destroyed. In Gibsland Supply Company, Inc. v. American Employers Insurance Company, 242 So.2d 310 (La.App. 2 Cir.1970) at pages 315 and 316, we find the following:
“Louisiana Revised Statutes, Title 22, Section 695, subsection B, delineates the rule with regard to fire damage to a building which is partially destroyed:
‘Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o’clock noon, Central Standard Time, on the first day of August, 1964, on any inanimate property, immovable by nature or destination, situated within the State of Louisiana, the insurer shall pay to the insured, in case of partial damage without criminal fault on the part of the insured or the insured’s assigns, such amount, not exceeding the amount for which the property is insured, at the time of such partial damage, in the policy of such insurer, as will permit the insured to restore the damaged property to its original condition; * * *.” (emphasis added)
We have thoroughly studied the statute and the cases cited by defendant which reputedly require application of the test of ‘cost of restoration less depreciation’ to partial loss to a building by fire. We are convinced that the valued policy provision quoted above does not require such a deduction. Therefore, such a rule would have to be established by the jurisprudence. Of the numerous cases cited by defendant in support of this last contention it should be pointed out that all such cases decided by the Louisiana State Courts were dealing with tort claims in which the measure of damages *1158 is different from that established by the Insurance Code, La.R.S. 22:695, supra. In Reliance Insurance Co. v. Orleans Parish School Board, (La.App. 5 Cir. 1963), 322 F.2d 803, the United States Court of Appeal relied on authorities other than Louisiana decisions and held that replacement-cost-less depreciation is the standard to be applied in determining the insurance owed in cases of partial loss. We are unimpressed with this argument. The statute makes no mention of depreciation and in fact, it has not been shown by valid evidence that the building here in question had depreciated from the time the policy was issued in June, 1967, until the time of the fire in October, 1967. Furthermore, Section C of La.R.S. 22:695 allows the insurer, at its own expense and without contribution on the part of the insured, to replace the property, immovable by nature or destination, partially damaged or totally destroyed.”
In Holloway v. Liberty Mutual Fire Insurance Company, 290 So.2d 791, 794 (La.
App. 1 Cir.1974), the court stated:
“However, here the defendant company, despite being reminded and charged with knowledge of the provisions of its own policy and the terms of the Valued Policy Statute, R.S. 22:695(B), chose to make a settlement with the plaintiff on the basis of the value of the carpeting damaged less a 60% depreciation factor. On the basis of our holding neither the terms of the policy nor the recited and pertinent statutory law justified a reduction for depreciation on the loss. See Gibsland Supply Co. v. American Employers Ins. Co., 242 So.2d 310 (La.App.2d Cir.1970).” To the same effect, we find the following footnote in
Trico Services Corporation v. Houston General Insurance Co., 414 So.2d 1313, (La.App. 2 Cir.1982) at page 1319:
Replacement cost coverage is of diminished utility in Louisiana because of the valued policy law and the jurisprudential construction of coverage on an actual cash value basis to mean the cost of repair or replacement of a partially destroyed object or of a totally destroyed object covered by a blanket-type policy without any allowance for depreciation. LSA-R.S. 22:695; Gibsland Supply Co. v. American Employers Ins. Co., 242 So.2d 310 (La.App. 2d Cir.1970); Holloway v. Liberty Mutual Fire Ins. Co., 290 So.2d 791 (La.App. 1st Cir.1974).”
In view of the foregoing, the $9,000.00 depreciation allowance of the lower court is hereby set aside and the award for damages to the premises is increased from $25,-368.81 to the policy limits of $27,000.00.
Plaintiff further contends that the lower court erred in awarding rental value for only two months instead of a full year. Section III — Extensions of Coverage in the policy provides as follows:
“RENTAL VALUE: The insured may apply up to ten percent (10%) of the amount specified for the principal dwelling item as an additional amount of insurance to cover on Rental Value (as herein defined) but not exceeding one-twelfth (V12) of said ten percent (10%) for each month the described dwelling or appurtenant private structures * * * are untenantable.”
Plaintiff states that he was not free to commence the repair of the damaged structure until after the date of the inspection on December 8, 1983, as requested by the Motion for Inspection filed on November 14, 1983, and the time for completion of the repairs after that inspection would take him past the one year period set forth in Section III of the policy. The trial court awarded rental value on the basis of the time it would take to complete the repairs. We are not persuaded that this approach was erroneous.
However, in stating the criteria for making an award for rental value, the trial judge mentioned, in his oral reasons, that according to Donald J. Kennelly it would take six to eight weeks to complete the repairs and hence the award was for two months as the period of untenantability. A reading of the transcript reveals that the testimony as to the time necessary to complete the repairs was not given by Donald
*1159 J. Kennelly but was given by Elliott Vincent. The trial court’s attributing the testimony to Kennelly instead of Vincent is understandable as Kennelly and Vincent worked together very closely in preparing the estimate of damages which was accepted by the court as the basis of its award. In addition, the transcript discloses that the time period attested to by Vincent was not six to eight weeks but ten to twelve weeks. The record also establishes that it had to take at least a month for plaintiff to secure an estimate and properly file a satisfactory proof of loss. Furthermore it took defendant two months to pay plaintiff anything after he filed a satisfactory proof of loss. Accordingly, the judgment of the trial court is amended to reflect rental value for six months at $225.00 a month or a total of $1,350.00.
The trial court found the defendant’s actions to be arbitrary, capricious and without probable cause. This finding is not disputed by either side. The ruling was based on the unwarranted reduction by defendant’s claim supervisor of the original $22,008.09 estimate of damages by its expert contractor, Sam Ruskin and additionally, the failure of defendant to tender to plaintiff without qualification the entire amount of what it felt was due and owing. The only controversy over the penalty provisions arises out of the failure of the trial court to apply the 12% penalty to the $11,-807.90 payment dated July 13, 1983 and received by plaintiff on July 19, 1983. Plaintiff contends the $11,807.90 payment was not made within the 60 day period set forth in LSA-R.S. 22:658. In order to decide this issue, it is necessary to present the following step by step transactions leading to the July 1983 payment.
The fire occurred on March 19, 1983. Plaintiff met with defendant’s claim representative on the scene on March 21, 1983 during which visit he signed a Proof of Loss in blank. Shortly after the visit, plaintiff called Menson P. Verret, an expert contractor, and asked him to submit an estimate of the damages resulting from the fire. On March 25, 1983, plaintiff wrote defendant requesting a Proof of Loss form. The Proof of Loss form was forwarded to plaintiff with the notation that it must be completed fully on both sides of the form. On April 12, 1983, plaintiff signed a Proof of Loss reflecting the verbal estimate by Verrett of $36,500.00 in damages and forwarded it to defendant. The April 12, 1983 Proof of Loss was returned to the plaintiff attached to a speed letter, dated April 19, 1983, requesting the plaintiff to complete fully the Proof of Loss and to have it notarized. On May 9, 1983, plaintiff sent the defendant a letter requesting information as to what was considered incomplete on the April 12, 1983 Proof of Loss. After revising the April 12, 1983 Proof of Loss, plaintiff had it notarized on May 13, 1983. The May 13, 1983 Proof of Loss contained considerably more information then that which appeared on the original Proof of Loss signed on April 12, 1983. The revised Proof of Loss was mailed the same day it was notarized but there is no indication as to when it was received. On May 18, 1983, plaintiff sent a letter to defendant enclosing the detailed $34,368.81 repair estimate of Donald J. Kennelly, a general contractor, together with a May 15, 1983 cover letter from Elliott Vincent, a claims estimator, who as noted previously worked very closely with Kennelly in the preparation of this first written estimate submitted to defendant. There is no indication as to when this letter was received by defendant. The Kennelly estimate was not available when the May 13, 1983 Proof of Loss was notarized and there is no reference to it on the May 13, 1983 Proof of Loss. On May 23, 1983, plaintiff executed and had notarized a Proof of Loss amending the March 21, 1983, April 12, 1983 and the May 13, 1983 Proofs of Loss so as to include for the first time the rental value as an additional loss. On May 25, 1983, defendant acknowledged receipt of the Kennelly estimate and requested that it be rewritten as it was impossible to understand and comprehend it in its present form — a fact which was recognized by Kennelly in his testimony as some of the abbreviations were not deci *1160 pherable and some were placed in the wrong columns.
LSA-R.S. 22:658 provides as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount *
The trial judge found that the $11,807.90 payment was within 60 days of receipt of a satisfactory Proof of Loss from the insured and this court must give great weight to the conclusions reached by the trier of fact and may not substitute our own evaluations and inferences for the reasonable evaluations and inferences of the trier of fact, unless these conclusions are clearly and manifestly erroneous. On reviewing the record, we cannot say that the finding of the trial judge was clearly and manifestly erroneous.
In fixing reasonable attorney’s fees for the prosecution and collection of the amount of the loss, the trial judge considers the nature of the proceedings, the uniqueness of the issues, the handling of pretrial motions, preparation for trial and the length of the trial. The award of $2,500.00 was well within the discretion of the trial judge but as that award did not include the preparation and argument of this appeal, we will add an additional $1,000.00 to the attorney’s fees to compensate him for the handling of the appeal.
Lastly, plaintiff complains of the failure of the trial judge to award expert witness fees in favor of each of the five experts he called to testify in addition to Donald J. Kennelly. In his oral reasons, the trial judge stated the expert witnesses, other than Kennelly, were not necessary for the resolution of the issues before the court. Carl D. Stenger, accepted as an expert electrician, made an estimate of the damages to the electric system. The estimate was never reduced to writing and was never a part of the process by which Ken-nelly arrived at his estimate of the total damages. In the same manner Menson P. Verrett, accepted as an expert contractor, made an estimate of the damages. He rendered an oral estimate of a total figure to the plaintiff and never submitted a detailed estimate to anyone. His estimate was not considered by Kennelly in the preparation of the estimate which was accepted by the trial judge. Charles M. Byrne, accepted as an expert on the cause and effect of fires, testified as to the cause of and the intensity of the fire. This was not an issue at the trial and the testimony in no way contributed to the determination of the amount of the loss. George Hubbell, accepted as an expert realtor, testified as to the value of the property before and after the fire. The testimony had no bearing on the amount of the loss. Elliott Vincent, accepted as an expert estimator, testified to having worked very closely with Kennelly in the preparation of and the checking of the damage estimate accepted by the court.
Unquestionably any litigant has a right to summon so-called experts, but the taxing of their fees and expenses as costs should be supervised most carefully and it is only where it is manifest that the testimony of the witnesses is in reality necessary to elucidate some technical or scientific subject that their fees and other expenses should be taxed as costs. *1161 Delpido v. Colony, 52 So.2d 720, 724 (La.App.Orleans 1951).
With the exception of Elliott Vincent and Donald J. Kennedy, the refusal to tax as costs expert witness fees for the experts called by plaintiff was within the discretion of the trial judge. However, as noted previously, the trial judge did use the testimony of Vincent in determining the rental value due the plaintiff and accordingly, this court will award an expert witness fee in favor of Vincent in the same amount as that awarded to Kennedy— namely $300.00.
The judgment of the trial court is amended to reflect the increase in damages to $28,350.00, less deductions of $11,807.90 and $100.00, with a 12% penalty on $16,-442.10, the increase in attorney’s fees to $3,500.00 and the addition of a $300.00 expert witness fee in favor of Elliott Vincent. As amended, the judgment of the lower court is affirmed. Defendant is to pay ad costs of this appeal.